**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| RONALD JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 2:13cv916-WHA |
| ) | |
| LIBERTY LIFE ASSURANCE COMPANY ) | (wo) |
| OF BOSTON, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This case is before the court on a Motion for Summary Judgment (Doc. #11), filed by the Defendant, Liberty Life Assurance Company of Boston ("Liberty"), and Motion for Summary Judgment (Doc. #12) filed by the Plaintiff, Ronald Johnson ("Johnson") on November 21, 2014.

The Plaintiff filed a Complaint in this case in the Circuit Court of Montgomery County, Alabama, bringing a claim for benefits under the Employee Retirement Income Security Act ("ERISA"). The Defendant removed the case to the court, the ERISA claim being a federal claim, bringing the case within federal court jurisdiction under 28 U.S.C. §1446.

For the reasons to be discussed, the Defendant's Motion for Summary Judgment is due to be GRANTED and the Plaintiff's Motion for Summary Judgment is due to be DENIED.

**II.   APPLICABLE STANDARDS**

**A. SUMMARY JUDGMENT STANDARD**

Summary judgment is proper "if there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S.

317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.   Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings" and show that there is a genuine issue for trial. *Id.* at 324.

Both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."   Fed. R. Civ. P. 56 (c)(1)(A),(B).   Acceptable materials under Rule 56(c)(1)(A) include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."

To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).   On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor.   *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a).

In resolving the present cross-Motions for Summary Judgment the court will construe the facts in the light most favorable to the nonmovant when the parties' factual statements conflict or

inferences are required.  *Barnes v. Southwest Forest Industries*, 814 F.2d 607, 609 (11th Cir.1987).

### B.  STANDARD FOR REVIEW OF ERISA BENEFITS DECISION

The Eleventh Circuit has a six-part test for review of benefits denial decisions.

(1) Apply the de novo standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
(2) If the administrator's decision in fact is "de novo wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.
(3) If the administrator's decision is " de novo wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).
(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.
(5) If there is no conflict, then end the inquiry and affirm the decision.
(6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Melech v. Life Ins. Co. of North America,* 739 F.3d 663, 673 (11th Cir. 2014).

### III. FACTS

The submissions of the parties establish the following facts, construed in a light most favorable to the non-movant:

The Plaintiff, Johnson, worked as a Maintenance Mechanic IV for the Health Care Authority for Baptist Health ("HCA"), an affiliate of UAB Health System, for thirty years.  He sustained back and neck injuries in the scope of his employment.  He had surgery twice in 2011, and the surgery lead to worsening headaches, low back pain, and pain in his legs.

Johnson's employer had contracted with Defendant Liberty for a Group Disability Income

3

Policy ("the Policy") as part of an employee welfare benefits Plan ("the Plan"). The Summary Plan Description in effect in 2011, (Doc. #20-1 at p.2), explained the procedures to follow in the effect of the denial of a claim, and stated that a claim denial would advise the claimant of a "right to bring a civil action under ERISA following an adverse decision on appeal." (Doc. #20-1 at p. 68).

Johnson filed a claim with Defendant Liberty against the Plan. Liberty approved Johnson for long-term disability benefits and began payment on June 29, 2011. Johnson attempted to return to work on July 25, 2011. He was working under light-duty restriction. His light duty restriction kept him from working in the position of Maintenance Mechanic IV. He was put to work by HCA as a greeter for incoming patients and visitors. He retired from employment on October 7, 2011.

At Liberty's request, on November 4, 2011, Johnson's treating physician, Dr. Bradley, gave Liberty all of Johnson's current medical records and restriction form. The Restrictions Form provided releases Johnson to light duty. (Doc. #15-3 at p.54). The form also refers to office notes. In the office notes, Dr. Bradley states that Johnson said that he quit his job because he could not tolerate the pain, and Dr. Bradley "would hope that he could return to some meaningful employment in a light-duty position in the future." (Doc. #15-3 at p.60).

On November 8, 2011, Liberty sent an email to HCA to inquire whether light duty accommodations were still available to Johnson when he stopped working on October 1, 2011, and was informed that Johnson would have continued on in a light duty position. (Doc. #15-3). Liberty was also informed that Johnson had received a disability retirement.

Johnson was declared disabled by the Social Security Administration.

On November 11, 2011, Liberty wrote Johnson and advised him that long-term disability

4

benefits were not payable beyond August 21, 2011.  Liberty cited two provisions of the Policy, which are parts of the definition of "disability" or "disabled."  One of these provisions concerned disability from one's "own occupation," and the other one stated that a covered person is disabled if unable to perform the duties of "any occupation."  (Doc. #15-3).[1]  The letter advised that Liberty was aware of the award of SSDI benefits and that Johnson "opted to retire following notification of" that award, but that Liberty's decision was based on Dr. Bradley confirming that Johnson was able to perform light duty work and the continuing availability of accommodations from Johnson's employer.  (Doc. #15-3 at p.35).

The denial of benefits letter provided that "[u]nder the Employee Retirement Income Security Act of 1974 (ERISA), you may request a review of this denial by writing to" a given address within 180 days.  (Doc. #15-3 at p.35).  The letter also stated that if Liberty did not receive a written request for review within 180 days "our claim decision will be final, your file will remain closed, and no further review of your claim will be conducted."  (Doc. #15-3).

No appeal of the decision in the November 11, 2011 letter was received by Liberty.

Liberty received a letter from Johnson's attorney on October 28, 2013 requesting a copy of the "Long Term Disability Policy." (Doc. #15-3 at p.14).  Liberty sent the Policy the next day.  (Doc. #15-3 at p.13).

Liberty has provided affidavit evidence that employees who make claims decisions on behalf of Liberty are not evaluated or compensated based on the amount or number of claims paid or denied, and that Liberty has taken steps to separate in terms of geography and management the claim determination functions and underwriting/premium functions.  (Doc. #15-1 at p.4-5).

---

1  Some of Liberty's evidence was filed under seal to protect the Plaintiff's confidential medical information and the Defendant's propriety information. The court has not referred to any information subject to seal.

### IV. DISCUSSION

Liberty has moved for summary judgment on the basis that Johnson failed to exhaust his administrative remedies, and alternatively and that the decision to deny the claim for benefits was not arbitrary or capricious. Johnson has moved for summary judgment on the basis that Liberty's denial of benefits is arbitrary and capricious, and responds to Liberty's Motion for Summary Judgment that this court ought to exercise its discretion not to enforce the exhaustion of remedies requirement. The court begins with the exhaustion arguments.

#### A. Exhaustion

"The law is clear in this circuit that plaintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court." *Counts v. Amer. Gen'l Life & Acc. Ins. Co.*, 111 F.3d 105, 108 (11th Cir.1997). This court must "strictly enforce" the exhaustion requirement, unless an "exceptional circumstance" is presented. *Perrino v. S. Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1315 (11th Cir. 2000). Exceptional circumstances may exist " 'when resort to administrative remedies would be futile or the remedy inadequate,' ... or where a claimant is denied 'meaningful access' to the administrative review scheme in place." *Id.* at 1316. "The decision of a district court to apply or not apply the exhaustion of administrative remedies requirement for ERISA claims is a highly discretionary decision." *Id.*

Johnson does not dispute that he failed to appeal the decision denying long-term disability benefits, but has argued that resort to the administrative remedy would have been futile, and that he was denied meaningful access to the administrative review scheme in place because no binding Plan documents told him how to proceed with an administrative remedy. Johnson also argues that

the letter sent by Liberty did not disclose that the administrative remedy was required. The court will address each argument in turn.

1. Futility

Johnson argues that administrative review was futile because Liberty had a conflict of interest that promoted its bottom line and that this, along with contrary evidence presented to Liberty, demonstrates that the decision would have come out the same way even if Johnson had appealed the determination. Johnson points out that Liberty concedes that it had a conflict of interest because Liberty was acting as the claims fiduciary and the insurer.

The futility exception "protects participants who are denied meaningful access to administrative procedures, not those whose claims would be heard by an interested party." *Lanfear v. Home Depot, Inc.*, 536 F.3d 1217, 1224 -1225 (11th Cir. 2008). The Eleventh Circuit has explained that "the futility exception is about meaningful access to administrative proceedings, not a potential conflict of interest of the decisionmakers." *Id.* To demonstrate futility, a plaintiff must make a clear and positive showing of futility. *Springer v. Wal-Mart Assoc. Grp. Health Plan*, 908 F.2d 897, 901 (11th Cir. 1900). In this case, the court cannot conclude that the admitted conflict of interest in this case considered by itself, or in conjunction with contrary evidence presented to Liberty, is sufficient to excuse the failure to exhaust administrative remedies. No clear and positive showing of futility has been made to excuse Johnson's failure to exhaust his administrative remedies. The court turns, therefore, to Johnson's arguments regarding denial of meaningful access.

2. Denial of Meaningful Access to Administrative Procedures

Liberty has provided the affidavit of Lynda Thacker, Benefits Manager for HCA, in which she states that the Summary Plan Description attached to her affidavit is the Summary Plan

7

Description which applied to all HCA employees in 2011. (Doc. #20-1 at p.2). The administrative review provisions of the Plan are contained in the Summary Plan Description. The Summary Plan Description states that Liberty's notice of a denial of a claim will include a statement of the claimant's right to bring a civil action under ERISA following an adverse decision on appeal. (Doc. #20-1 at p.68). The administrative procedure in place, therefore, identifies a right to bring a civil action under ERISA after there is an adverse decision on an appeal, not after the initial denial of benefits.

     Johnson admits that administrative procedures are included in the Summary Plan Description in evidence, (Doc. #19 at p. 9), but argues that the procedures were not available to him. Johnson argues that he was provided a copy of the Policy upon request in 2013, and that Liberty provided additional copies of policies in its initial disclosures, in support of the Motion for Summary Judgment, and its supplemental disclosures on December 5, 2014. Johnson states that the newly-disclosed copy of the Policy also contains a Summary Plan Description. He points to a page within the exhibit, however, which states that the date the Policy was "provided" is February 7, 2012, after his employment ended.[2] Johnson has argued, therefore, that he was denied meaningful access to an administrative scheme because there is no administrative scheme in the Policy, and a copy of the Summary Plan Description was "provided" after his employment.

     To be clear, Johnson has not argued, or presented any evidence to support an argument, that he did not have a copy of any Plan documents during his employment, nor has he presented evidence that Liberty refused to provide him with Plan documents at any time. This is not like

---

[2] Liberty does not explain this date, stating only that the Affidavit of Lynda Thacker states that the document is the Summary Plan Description that applied to all employees of HCA in 2011. (Doc. #20-1 at p. 2). For purposes of the Motions for Summary Judgment, therefore, the court will accept that there is no evidence of a Summary Plan Description considered by Johnson at the relevant time, but the court does not consider Johnson to have created a question of fact as to whether there was a Summary Plan Description, nor as to whether the Summary Plan Description which is in evidence was in effect at the relevant time.

those cases in the Eleventh Circuit in which exhaustion was excused because the plan refused to provide plan documents, preventing a claimant from using the administrative procedures. *See, e.g., Curry v. Contract Fabricators, Inc. Profit Sharing Plan*, 891 F.2d 842, 844 (11th Cir.1990), *abrogated on other grounds by Murphy v. Reliance Standard Life Ins. Co.*, 247 F.3d 1313, 1315 (11th Cir.2001)). In this case, the undisputed evidence before the court is that Plan documents were provided to Johnson when requested by his attorney, and there is no evidence of any other requests being denied.

Johnson's argument is instead that he did not have meaningful access to the administrative procedure because he could not rely on the procedure set out in the denial of benefits letter. He states that he had to rely on a binding Plan document--the Policy, which does not contain the administrative procedure. He points out that only an officer can amend the Policy. Based on this Policy language, Johnson argues that the denial of benefits letter would be interpreted by a reasonable person to be an amendment inconsistent with the Policy, and so he reasonably would not follow the procedure in the letter.

There are two flaws in this argument by Johnson. First, the administrative claims procedure is set out in the Summary Plan Description, and the procedure described in the denial of benefits letter is not inconsistent with the claims procedure in the Summary Plan Description in effect in 2011. *See Perrino v. Southern Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1316 (11th Cir. 2000) (stating that "[u]nder ERISA, an employer is required to furnish employees with a 'Summary Plan Description' that gives details of the benefits provided by the company, and articulates the claims procedure available to present and adjudicate ERISA claims. *See* 29 U.S.C. § 1021–22; 29 C.F.R. § 2560.503–1."). Second, Johnson's argument is based on Policy language which he says he received after his attorney requested the Policy in October of 2013, after the 180 days in which he

9

had to seek review of the denial of his claim.   Johnson could not have relied upon the absence of language in the Policy about administrative remedies to make a decision not to appeal during the time to appeal provided by the denial letter.   (Doc. #14-5).

According to Johnson's own argument, when his benefits were denied, he was provided a benefits denial letter, and there is no evidence that he consulted any other source.   The benefits denial letter informed Johnson how to proceed with administrative review of his claim.   The court cannot conclude, therefore, that Johnson was denied meaningful access to the administrative procedure in place.   The court now turns to Johnson's argument based on *Watts*.

### 3. The *Watts* Exception to the Exhaustion Requirement

Although Johnson concedes that he received the benefits denial letter which outlined his administrative remedy, he cites *Watts v. BellSouth Telecomm., Inc.*, 316 F.3d 1203, 1207 (11th Cir. 2003), as supporting his argument that he has established futility of exhaustion of administrative remedies based on the content of the letter.

In *Watts* the Eleventh Circuit explained that a futility excuse should succeed if "the reason the claimant failed to exhaust is that she reasonably believed, based upon what the summary plan description said, that she was not required to exhaust her administrative remedies before filing a lawsuit." *Watts*, 316 F.3d at 1207.   The summary plan description in that case stated the participants may use the administrative appeal procedure and may file a suit if their claim is denied, indicating "either route as one the participant 'may' use to obtain relief from the denial" of a claim.   *Id.* at 1208.   The court emphasized that there were "two parts" to the reasonable interpretation of the summary plan description that a claimant had the option of suing without exhausting administrative remedies, one of which was the statement of the right to sue in federal court.   *Id.* at 1209.   The court announced a rule that if a plan claimant reasonably interprets a

summary plan description as permitting her to file a lawsuit without exhausting administrative remedies, her lawsuit is not barred if she fails to exhaust administrative remedies.   *Watts*, 316 F.3d at 1210.

A district court examining the *Watts* exception has concluded that the exception requires proof by the plaintiff of three elements:   (i) the relevant plan documents objectively speaking could reasonably be interpreted as permitting the plaintiff to file a lawsuit without exhausting administrative remedies, (ii) that the plaintiff interpreted the documents that way, and (iii) that as a result of the misinterpretation, the plaintiff failed to exhaust the administrative process.   *Spivey v. Southern Co.*, 427 F. Supp. 2d 1144, 1157 (N.D. Ga. 2006).

A Seventh Circuit decision, *Gallegos v. Mt. Sinai Medical Center*, 210 F.3d 803 (7th Cir. 2000), relied upon by the Eleventh Circuit in *Watts,* 316 F.3d at 1209, emphasizes the importance of the latter requirements.   In *Gallegos*, the court concluded that the plan language allowed for the interpretation that exhaustion was not required, but because the plaintiff did not allege that she allowed the time for her appeal to lapse because she had chosen to pursue relief in federal court, the court concluded that the exhaustion requirement would be enforced.   210 F.3d at 811.

In this case, the denial of benefits letter sent to Johnson stated that under ERISA he could request a review of the denial of his claim,[3] and that a failure to send a written request for review within 180 days would mean that Liberty's claim decision would be final.   (Doc. #15-3). Accepting Johnson's evidence as true and drawing all reasonable inferences in his favor for purposes of deciding Liberty's motion, Johnson received a denial letter but did not have or consult

---

3 No argument has been raised as to this phrasing, so the court does not address it, but notes that if it is deficient, it would not alter the court's analysis.   *See Perrino v. Southern Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1317 (11th Cir. 2000) (stating that the "exhaustion requirement for ERISA claims should not be excused for technical violations of ERISA regulations that do not deny plaintiffs meaningful access to an administrative remedy procedure through which they may receive an adequate remedy.")

other Plan documents. The facts in this case, therefore, are unlike *Watts* in which the text of documents relied on by the claimant told her there were two remedies she could pursue, and reasonably led her to believe she could pursue either one at her option. Here, Johnson was told that he could seek review of the denial of his claim, and that failure to seek the specified review would make his claim denial final. An interpretation of Liberty's letter that if Johnson wanted to pursue additional relief, he did not have to seek the review of his claim as described in the letter would be unreasonable.

Even if Johnson's interpretation was reasonable, this case does not fall within the *Watts* exception because the claimant in *Watts* filed an affidavit in which she stated that she consulted the summary plan description and interpreted it to mean that she could either pursue an administrative remedy or file suit. *Watts*, 316 F.3d at 1206. Johnson has provided an affidavit in this case, but in that affidavit he makes no mention of any reliance on language in his denial of benefits letter. (Doc. #13-13). The court has been pointed to no evidence of reliance by Johnson on any interpretation of language in the benefits denial letter. Johnson, therefore, has not proven the exception as outlined in *Watts*, and the court declines to extend the exception in this case.

In conclusion, this court must strictly enforce an exhaustion of administrative review requirement for an ERISA plaintiff unless an exceptional circumstance is presented. Johnson has not demonstrated the exceptional circumstances of futility, lack of meaningful access to administrative procedures, or that he relied on a reasonable interpretation of Plan documents that he did not have to exhaust his administrative remedies. Therefore, summary judgment is due to be granted Liberty for Johnson's failure to exhaust his administrative remedies.

### B. Benefits Denial

Even if the court were to exercise its discretion to excuse Johnson's failure to exhaust his

administrative remedies, for the reasons discussed below, Liberty would still be entitled to summary judgment in this case.

Following the six steps of analysis outlined above, *see Melech*, 739 F.3d at 673, Liberty argues that its decision to deny Johnson benefits was correct because Johnson voluntarily retired even though his employer continued to make available to him a light duty position at the same pay, and his doctor had stated that he was able to perform a light duty position on a full-time basis, which meant that he was no longer disabled within the meaning of the Policy.
Liberty further argues that even if the decision was not correct, its decision still should be upheld because Liberty had sole discretion to construe the terms of the policy, and there were reasonable grounds to support the determination.   Liberty states that although it operated under a conflict of interest, there is evidence that Liberty took affirmative steps to separate underwriting and claims functions.   Liberty cites to unpublished opinions including *Havens v. Liberty Life Assurance Co. of Boston*, No. SA-09-CA-372-H, Slip Op. (W.D. Tex. Jul. 6, 2010), for the proposition that when an insurer takes steps such as physically separating case managers and employees who make underwriting decisions, and requirement management oversight and review of any claim denial, absent other factors giving weight to the conflict of interest, courts should give minimal weight to a conflict of interest.   (Doc. #11, Ex. 2 at p.1).

Johnson argues that he was disabled under the policy because he worked as a Maintenance Mechanic IV which required him to stand, stoop, bend, climb, and worked in cramped positions, but after his surgery, Johnson was unable to perform the duties of his Own Occupation, under the Plan.   The "own occupation" is not the basis for Liberty's motion, however.

In response to the ground for claim denial that Johnson was no longer disabled under the Policy's "any occupation" provision, Johnson argues that Dr. Bradley stated in the medical records

13

provided to Liberty that Johnson was on light-duty restriction, but also directed the reader to his notes in which he stated that Johnson had left employment and he hoped that Johnson would be able to return to light-duty work in the future. Johnson argues that the greeter position he was placed into was not sustainable employment because it is a volunteer position, although Liberty takes the position that the evidence Johnson relies on for that argument was not information presented to Liberty during his claim and should not be considered now. Finally, Johnson states that even considering the light-duty position, he was unable to perform the duties of that position. Johnson also cites *Melech v. Life Ins. Co. of N. Am.,* 739 F.3d 663, 674 (11th Cir. 2014), in which the court remanded a decision on benefits for reconsideration in light of the Social Security disability determination which was not considered by the Plan.

The benefits denial letter Liberty sent to Johnson states that the medical information states that Johnson was released to light duty, that the medical records confirmed an ability to continue with light duty work, and that the employer confirmed that light duty accommodations would have been available if Johnson had continued working. The letter also acknowledges the determination by the Social Security Administration, distinguishing this case from *Melech*.

Johnson's primary disagreement with the basis for the denial is that the medical records confirmed an ability to continue with light duty work. Upon review of the information in front of Liberty at the time, the fact that Johnson was not working was not as a result of any recommendation or restriction by his doctor, but was his decision, and his physician, Dr. Bradley, expressed that it was his hope that Johnson would return to light duty. The form released Johnson to light duty work. ACH had confirmed that light duty work was available to Johnson. This decision, therefore, was not "wrong," and, if it was "wrong," Liberty, which had discretionary authority, based the decision on reasonable grounds, i.e. his release to light duty work and the

availability of light duty work.   The court is also persuaded by unpublished opinions provided by Liberty that the conflict of interest in this case should not be given great weight.

The court concludes, therefore, that summary judgment is due to be GRANTED as to Liberty on this alternative basis.

## V. CONCLUSION

For the reasons discussed, the Motion for Summary Judgment (Doc. #11), filed by the Defendant, Liberty Life Assurance Company of Boston ("Liberty") is hereby ORDERED GRANTED, and the Motion for Summary Judgment (Doc. #12) filed by the Plaintiff, Ronald Johnson is DENIED.

Done this 20th day of January, 2015.

/s/ W. Harold Albritton
W.   HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE